**UNITED STATES v. 115.128 ACRES OF LAND, MORE OR LESS, IN NEW-ARK, N. J., et al.**
**Claim of WARD.**

Misc. No. 409a.

United States District Court
D. New Jersey.

Oct. 27, 1952.

See also, 101 F.Supp. 796.

Riker, Emery & Danzig, by Charles Danzig, Newark, N. J., for petitioner.

Charles Handler, Corp. Counsel, Newark, N. J., for defendant, city of Newark.

Nathan A. Whitfield, Montclair, N. J., for claimant, Marjorie Ward.

FAKE, District Judge.

Issue is joined here as to the proper distribution of certain funds arising in the above entitled condemnation proceedings. The City of Newark claims that it was the owner in fee of a certain parcel of land when taken by the United States, and the claimant, Marjorie Ward, contends that she was a tenant in common, holding a one-fourth interest, with the City in the said parcel.

The pertinent facts bearing upon the record title are as follows:

The father of the claimant, one Frederic W. Ward, died on April 6, 1899, the sole owner of a tract of land containing 11.29 acres. We are here concerned primarily with 3.11 acres carved out of the original tract. He left surviving, his widow, and four children, the youngest, Marjorie, being the claimant herein. The said Frederic Ward left a last will and testament under the terms of which he devised and bequeathed his entire estate to his widow and appointed her the sole executrix thereof. The will was dated December 31, 1897, and the claimant, Marjorie, was born thereafter on September 2, 1898. Her claim here is that her father died intestate, so far as she was concerned, and by virtue of the statutory and case law on the subject, she became seized of a one-fourth interest in the parcel in question upon her father's death.

By stipulation between the parties, the value of said interest is fixed at $19,332.

The law as it was at the time of Ward's death is considered in an opinion by the late Vice-Chancellor Pitney, in Van Wickle v. Van Wickle, 59 N.J.Eq. 317, 44 A. 877. He quotes from 3 Gen.St. p. 3760, Sec. 19 [now N.J.S. 3A:3–11], as follows:

"That if a testator having a child or children born at the time of making and publishing his last will and testament, shall at his death, leave a child or children born after the making and publishing of his said last will and testament, * * * the child or children so after-born, * * * if neither provided for by any settlement nor disinherited by the said testator, shall succeed to the same portion of the father's estate, as such child or children or descendants as aforesaid would have been entitled to, if the father had died intestate; * * *."

The will of Frederic W. Ward was probated on April 17, 1899.

On October 6, 1899, the widow, Jessie O. Ward, purported to convey the entire parcel, above mentioned, in fee to one James Smith, Jr. Apparently, upon the face of this transaction, the estate of the after-born child, Marjorie, was completely overlooked.

Thereafter, on February 28, 1903, the executrix, Jessie O. Ward, petitioned the Essex County Orphans Court to have the estate of the said Frederic W. Ward declared insolvent. Upon an accounting and a proper showing, a decree of insolvency was entered on May 18, 1903. Following due notice to all parties in interest, except the claimant herein, a decree was entered showing assets of $19,727.44, and liabilities of $50,014.29. No exceptions were taken to the accounting. The decree then provided for the sale of lands to pay decedent's debts. In her final account, the executrix shows that some 8 parcels of land were left by decedent at his death, only 7 of which were sold, however, pursuant to the authority to sell to pay debts. She accounts for the premises in question, being the tract sold to Smith, not by an authorized sale, but by turning in the net consideration price she had received from her sale of the same to Smith; to wit, $1,874.38.

It is noted that during all these proceedings, the claimant, Marjorie Ward, was an infant. No notice to her, either actual or constructive, is shown, and no guardian was appointed to represent her. She did not become 21 years of age until September 2, 1919.

Nothing in the foregoing probate proceedings, however, resulted in divesting the title which came to her upon her father's death. Nor, can these proceedings be collaterally attacked, or opened up to take claimant's estate for the creditors. The lapse of time and statutory limitations prevent this.

In December, 1911, the City of Newark instituted condemnation proceedings against the premises in question, together with other property. In these proceedings, Smith was made a party and dealt with as though he was the owner in severalty of the tract mentioned. Not having been made a party to the condemnation proceedings, the one-fourth interest of the claimant, Marjorie Ward, was not divested.

Final judgment in the City's condemnation proceedings was entered on April 17, 1912. Eight years were yet to elapse before claimant arrived at 21 years of age.

On March 3, 1942, title passed to the United States by the filing of a declaration of taking including the disputed property.

The foregoing would lead to the conclusion that at the time of the taking, in the instant case, Marjorie Ward was a tenant in common with the City of Newark, owning a one-fourth interest in the property described in the Smith deed, unless she had lost her title or her right to claim the same by operation of law. This brings us to the subject of

### Adverse Possession

The best citation I have found on this subject is from Thompson on Real Property, Perm.Ed.1940, Vol. 4, Sec. 1886, pgs. 414, 415:

"Sec. 1886. (1825). *Notice from acts of claimant.*—Before adverse possession by one tenant in common

against his cotenant can begin, the former must, by acts of the most open and notorious character, show clearly to the world and to all having occasion to observe the condition and occupancy of the property that his possession is intended to exclude and does exclude the rights of his cotenant. This rule is applicable only where there is a cotenancy and subsequently one of the cotenants makes claim to the entire estate. The possession of a tenant in common may become adverse to his cotenants by acts so open and notorious as to show them that he claims exclusive title and possession. Notice results from conduct leaving the observer no doubt that an exclusive right of enjoyment is asserted. Judge Taft, in the Circuit Court of Appeals, fully and clearly states the law upon this subject in a recent decision, saying: 'Before adverse possession by one tenant in common against another can begin, the one in possession must, by acts of the most open and notorious character, clearly show to the world, and to all having occasion to observe the condition and occupancy of the property, that his possession is intended to exclude and does exclude, the rights of his cotenant. It is not necessary for him to give actual notice of this ouster or disseising of his cotenant to him. He must, in the language of the authorities, "bring it home" to his cotenant. But he may do this by conduct, the implication of which cannot escape the notice of the world about him, or of any one, though not a resident in the neighborhood, who has an interest in the property, and exercises that degree of attention in respect to what is his that the law presumes in every owner.' Elder v. McClaskey [6 Cir.] 70 F. 529, [542]."

The New Jersey cases are not in conflict with the foregoing.

As has been seen on October 6, 1899 the widow and sole beneficiary under the will of Frederic Ward made a deed to one Smith covering 11.29 acres, as shown on the maps in evidence. Thereafter, in December, 1911, the City of Newark instituted condemnation proceedings, for a port development, against the said premises and other property. Smith was made a party to these proceedings but his cotenant, Marjorie Ward, was not. At that time the tract in question formed part of a large unimproved swamp or salt marsh area partly covered by water at high tide.

The City condemnation proceedings were completed in 1912, and since that date the property has not been taxed. In 1914 the general development of the port was started. It appears that in this development the City constructed bulkheads 11 feet high along the Newark Bay frontage of the property to retain fill, and in 1915 the acreage in question was filled to a height of 6 or 7 feet. Activities by the City, and apparent to the eye, continued on and over the property until claimant arrived at 21 years of age. Structures were erected thereon and railroad lines were run over it. It was leased, with other property, to the Submarine Boat Works in 1919, and many evidences of possession, by the City and its lessors, were apparent to anyone who visited the premises. An examination of the agreed statement of facts discloses the many activities.

Out of these circumstances I find that the City of Newark had maintained open, notorious, continuous and hostile possession of the property down to the time when claimant, Marjorie Ward, reached her 21st birthday, to wit: December 1, 1919. At that time she became charged with constructive notice, from the record, that she had an interest in the acreage by virtue of inheritance from her deceased father. That she had actual notice of the situation, in 1919 and again in 1923, appears by deeds which she signed to clear the title to other properties of which her father had died seized, which deeds recite defects of title because of her birth after the date of her father's will.

On September 2, 1939 twenty years elapsed since Marjorie Ward became 21 years of age. During that period, so far as the evidence here discloses, she made no attempt to take over her interest in the property.

The fact that an exclusive authority was functioning on and over the premises was apparent to the eye of any observer, including the claimant. The mere fill and bulkheading, standing alone, disclosed an owner hostile to her rights. She could see, by comparison with the surrounding terrain, that the acreage, of which her father died seized, had been a swamp, and when she reached 21 it was highly improved land with buildings on portions of it. It is clear, I think, that possession by the City, as evidenced in this case, was possession of the entire 11.29 acres, and it, therefore, included the 3.11 acres with which we are immediately concerned. The activities of the City over the 3.11 acres alone spell out adverse possession in the City pro tanto.

It is argued that there is no evidence that Smith ever took actual possession of the property, and therefore when the City condemned, it did not affect claimant's title. Whether Smith took actual possession or not, claimant's title was not affected, as has been seen; she was an infant at the time. It is my thought that, on condemnation, the City took whatever Smith had. An attempt is made to differentiate between a taking by deed and a taking by condemnation. The case of Foulke v. Bond, 41 N.J. L. 527, at page 540, holds: "Entry by a deed of conveyance for the entire estate, made by one of the co-tenants and duly placed on record, has all the constituent elements of a disseizing at common law." It is urged that this rule does not obtain where the taking is by eminent domain. The point is immaterial. It does not obtain here for the very important reasons that claimant had a title at the time; was not a party to the condemnation proceeding, and was protected as a minor. There is this to be said about it however: When claimant became 21 years of age she had constructive notice of the deed to Smith in severalty and of all the continuing factors bearing on adverse possession by the City, and she did nothing about it for 20 years thereafter.

The conclusion here is that the City has gained title of the interest of claimant by adverse possession, and she has lost her right to complain by the running of the Statute of Limitations which is 20 years in this case.